UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DANIEL ALEJANDRO MADRIZ ORTIZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00320-JPH-MKK |
| | ) | |
| MARKWAYNE MULLIN, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Noncitizen Daniel Alejandro Madriz Ortiz petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from the Clay County Jail in Brazil, Indiana, where he is detained at the direction of U.S. Immigration and Customs Enforcement ("ICE").

For the reasons explained below, the Court grants the petition to the extent that no later than **5:00 p.m. on May 20, 2026**, Respondents must either: (1) afford Mr. Madriz Ortiz an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release him from custody, under reasonable conditions of supervision.

### I. Background

Mr. Madriz Ortiz is a citizen of Venezuela who entered the United States without inspection on or about June 30, 2022. Dkt. 8-1 at 4. Petitioner was encountered by Customs and Border Protection on June 30, 2022, who paroled

1

him into the country under Section 1182(d)(5) with instructions to report to ICE within 60 days. *Id.* at 2, 3, 9. His parole expired on August 30, 2022. *Id.* at 9.

Mr. Madriz Ortiz timely filed his asylum application, has never been arrested or convicted of any crime, and has lived in the United States since June 30, 2022. On April 28, 2026, nearly four years after being paroled, ICE informed Mr. Madriz Ortiz that his parole was terminated and the Department of Homeland Security initiated removal proceedings by serving him with a Notice to Appear (Form I-862) and arrested him pursuant to an administrative warrant (Form I-200). *Id.* at 2, 4, 8, 11.

The Notice to Appear charges Mr. Madriz Ortiz with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. 8-1 at 7. Neither the "arriving alien" nor any of the other checkboxes is marked. *Id.* at 4.

Mr. Madriz Ortiz's removal proceedings remain pending.

## II. Analysis

Mr. Madriz Ortiz argues that his detention violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. The respondents oppose both claims. The Court finds that Mr. Madriz Ortiz's detention is governed by 8 U.S.C. § 1226(a) and that it is unlawful because he has not been afforded a bond hearing. Because Mr. Madriz Ortiz is entitled to relief on this basis, the Court does not reach his due process argument. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the

2

principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez,* 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-,* 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond . . . ; or

(B) conditional parole . . . .

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings,* 583 U.S. at 306 (citing 8 C.F.R. §

3

236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the

4

United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### 1. The Revocation of Mr. Madriz Ortiz's Parole Does Not Require or Allow Mandatory Detention

Respondents assert that Mr. Madriz Ortiz is subject to § 1225(b)(2)(A) because by operation of law, once his parole expired, he was returned to the "custody from which he was paroled" to be "dealt with in the same manner as that of any other applicant for admission to the United States." Dkt. 8 at 2 n.1 and n.2, 12. As this Court has previously discussed, this change in status does not trigger mandatory detention. *See Vanovskyi v. Mullin, et al.*, No. 2:26-cv-00271-JRS-MKK, dkt. 10 at 4-6 (S.D. Ind. April 30, 2026).

Respondents rely on one key provision to support their argument that the expiration of Mr. Madriz Ortiz's parole subjects him to detention under § 1225(b)(2)(A)—that after parole terminates, "the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Respondents do not explain, however, how this language results in Mr. Madriz Ortiz's mandatory detention. Moreover, Respondents' interpretation only works if the term "custody" is used interchangeably with the term "detention". "Custody" and "detention" are not synonymous but different concepts. Interpreting § 1182(d)(5)(A), the court in *Qasemi v. Francis* explained:

5

> The law and the statute draw a distinction between "detention" and "custody." "Custody" does not necessarily mean physical custody. It concerns any status under which a person or thing is under "the care and control of [another] for inspection, preservation or security." Black's Law Dictionary 390 (7th ed. 1999). That contrasts with "detention" or "detain," which Congress uses frequently. When "custody" is intended to denote detention, it is preceded by the modifier "physical," or "in." For example, as the Supreme Court has held, an incarcerated person placed on parole is in the "custody" of the parole board, even if he is not subject to its "actual, physical custody." *Jones v. Cunningham*, 371 U.S. 236, 239–40 (1963). "Custody" used alone refers to "restraints on a man's liberty, restraints not shared by the public generally." *Id.*

2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025). Though *Qasemi* is not binding on this Court, its careful analysis of the key terms is persuasive. *Qasemi* explained that returning the petitioner there to custody resulted in his loss of certain benefits bestowed upon individuals who have "parole" status. *Id.* at *10-11. "It is this 'custody' that Section 1182(d)(5)(A) contemplates a noncitizen must be returned to following termination of their parole. . . . [T]hey remain a noncitizen living in the United States who used to be paroled and must be treated by the INA accordingly." *Id.* at *11.

This interpretation of "custody" is supported by the rest of the sentence, which provides that the alien "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). In other words, after parole expires, the alien will be treated like any other unadmitted alien under the INA. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005) (interpreting § 1182(d)(5)(A) to subject the alien, who was under a

6

final order of removal, to "[t]he manner in which the case of any other applicant would be 'dealt with' beyond the 90–day removal period [under] § 1231(a)(6)").

In sum, Section 1182(d)(5)(A) does not require Mr. Madriz Ortiz's mandatory detention. On the contrary, it requires that he be treated like any other "applicant for admission." Therefore, the Court must determine whether Mr. Madriz Ortiz's current detention is authorized by § 1225(b)(2)(A).

**2.      Mr. Madriz Ortiz is Eligible for a Bond Hearing Under § 1226(a)**

The Court has previously determined that considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Mr. Madriz Ortiz who have lived in the interior of the United States for years. *See Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *Jackson Rizo v. Swearingen*, Case No. 2:26-cv-00026-JPH-MKK (S.D. Ind. Jan. 23, 2026); *Corzo Martinez v. Olson et al.*, No. 2:26-cv-00003-JPH-MKK, Dkt. 13 (S.D. Ind. Jan. 10, 2026); *see also Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *3-5 (S.D. Ind. Oct. 30, 2025). As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice.[1] *See, e.g., Alejandro*, 2025 WL 2896348, at *14-19.

---

[1] The Court incorporates by reference its more fulsome statutory interpretation of 8 U.S.C. §§ 1226 and 1225 and corresponding analysis of the circumstances to which those statutes apply as set forth in Alejandro, 2025 WL 2896348, at *14–19; Jackson Rizo, No. 2:26-cv-00026-JPH-MKK, and Corzo Martinez, No. 2:26-cv-00003-JPH-MKK.

In December 2025, the Seventh Circuit issued an opinion in *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (*Castañon-Nava* I). There, the Seventh Circuit determined that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. The Court has relied on that opinion as persuasive authority[2] and continues to do so after the Seventh Circuit's most recent opinion in *Castañon-Nava*, 2026 WL 1223250 (7th Cir. May 5, 2026) (*Castañon-Nava II*).

Respondents cite a recent Fifth Circuit Court of Appeals decision, which upheld the government's interpretation of § 1225(b)(2)(A) in finding that "seeking admission" is a permissible redundancy for "applicant for admission." Dkt. 8 at 5, 7, 10-11; *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) ("The Supreme Court has observed that 'redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication' . . . . That seems doubly true where the ordinary meaning of the terms involved overlap. Because being

---

[2] *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' [161 F.4th at 1061]. But the statutory-interpretation issue that the opinion resolved was one purely of law, and any adjustment to the factual record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

an applicant ordinarily entails seeking something, it seems natural to use the words somewhat interchangeably.") (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)). Even if the terms refer to different things, the Fifth Circuit found that petitioners such as Mr. Madriz Ortiz can be said to be "seeking admission" even though they have resided within the country for years and are not affirmatively seeking to enter the United States. *Id.*

Respondents also cite a recent Eighth Circuit case, *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). *See* dkt. 8 at 5, 10–11, 15. The *Avila* court held that the meanings of "applicant for admission" and "seeking admission" and the grammatical structure of 8 U.S.C. § 1225(b)(2)(A) show that "in the context of the statute the two phrases are synonymous." 170 F.4th at 1135.

Countering those circuit decisions, the Second Circuit recently decided *Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044 (2d Cir. Apr. 28, 2026). There, the Second Circuit rejected the government's argument and adopted the reasoning set forth in *Castañon-Nava I*: "Although divided panels in two other circuits have agreed with the government, . . . we respectfully find the statutory analysis in those decisions, which largely mirrors the government's flawed arguments in this case, to be unpersuasive." *Id.* at *4. The court went on to conclude that "because Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,' it does not apply to Petitioner." *Id.* at *6. As Respondents note, the Eleventh Circuit recently joined the Second Circuit in rejecting the government's expansive interpretation of § 1225. *Hernandez Alvarez v. Warden*, et al., No. 25-14065, --- F.4th ---, 2026 WL

1243395 (11th Cir. May 6, 2026).[3] After this matter was briefed, the Sixth Circuit came to a similar conclusion. *See Lopez-Campos, et al. v. Raycraft, et al.*, Nos. 25-1965/1969/1978/1982, --- F.4th ---, 2026 WL 1283891 (6th Cir. May 11, 2026)[4].

This Court is not convinced that the Seventh Circuit will eventually join the *Buenrostro-Mendez* and *Avila* side of the circuit split.  So, in line with *Castañon-Nava I* and now *Cunha, Hernandez Alvarez*, and *Lopez-Campos*, the Court continues to rely on its previous conclusion that § 1225(b)(2)(A) does not apply to undocumented aliens like Mr. Madriz Ortiz who have lived for years in the interior of the United States and were arrested on an administrative warrant "command[ing]" that the alien be arrested pursuant to 8 U.S.C. § 1226.

Furthermore, Respondents' legal reasoning cannot not be reconciled with the government's treatment of Mr. Madriz Ortiz, *i.e.*, arresting him in the interior of the United States pursuant to an administrative warrant that explicitly

---

[3] "Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—'an alien who is an applicant for admission' and 'an alien seeking admission'—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years." *Id.* at 21.

[4] "We therefore find that an 'applicant for admission' is not necessarily 'seeking admission.' Because no Petitioner is alleged to be seeking admission or lawful entry into the United States, § 1225(b)(2)(A)'s mandatory detention scheme does not apply to them. And since '§ 1226 applies to aliens already present in the United States' and 'creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings,' Petitioners could have been detained pursuant to only § 1226." *Id.* at 11.

10

authorized his detention under § 1226 and serving him with a Notice to Appear that does not indicate he is an arriving alien. Given the government's treatment of Mr. Madriz Ortiz, it cannot plausibly now maintain that he is subject to § 1225(b)(2)(A) and therefore categorically ineligible for discretionary release. *See Singh*, 2025 WL 3029524, at *6 (citing *Patel v. Crowley*, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)).

The facts here are also quite different from *Buenrostro-Mendez* where the court's analysis did not indicate that the petitioners were arrested pursuant to an administrative warrant and then served with a Notice to Appear for full removal proceedings. *See Buenrostro-Mendez*, 166 F.4th at 500 ("DHS encountered each petitioner in 2025, and, upon inspection, immigration officers determined that each was inadmissible as an alien present in the United States without having been admitted or paroled . . . DHS commenced removal proceedings under 8 U.S.C. § 1229a against both petitioners, directing that they be detained under 8 U.S.C. § 1225(b)(2)(A) for the duration of those proceedings."). In *Avila*, the petitioner was served with a Notice to Appear, but the record is silent as to whether he was arrested pursuant to an administrative warrant. *See* 170 F.4th at 1132. In contrast, Mr. Madriz Ortiz was served with an administrative warrant that authorized federal agents to detain him pursuant to § 1226. *Buenrostro-Mendez* and *Avila* therefore do not necessarily apply to the facts here.

In sum, the record demonstrates that Mr. Madriz Ortiz's detention is authorized only by § 1226(a), entitling him to consideration of release on bond.

### 3. Scope of Relief

Mr. Madriz Ortiz requests immediate release from custody or a bond hearing where the "burden is on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk." Dkt. 1 at 17. Immediate release is the customary remedy in habeas proceedings. *See Thuraissigiam*, 591 U.S. 103 at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). The Court finds that it would not be in the interests of justice to order Mr. Madrid Ortiz's immediate release at this time and instead orders Respondents to provide him an individualized bond hearing as required by § 1226(a) and its regulations.

Last, Mr. Madriz Ortiz asks the Court to order that the government bear the burden of proof at the bond hearing. The Court finds this aspect of Mr. Madriz Ortiz's petition premature. The only issue before the Court is whether Mr. Madriz Ortiz is being held in violation of the Constitution or laws of the United States. The Court has determined that § 1225(b)(2)(A) does not apply to Mr. Madriz Ortiz and that his detention is authorized only by § 1226(a). The Court has therefore ordered Respondents to either provide Mr. Madriz Ortiz an individualized bond hearing under § 1226(a) and its regulations or release him. Should Mr. Madriz Ortiz still be detained after Respondents have certified to the Court that they

12

have complied with the Court's order, he may file a motion for the Court to enforce judgment if he has a good-faith basis to believe that his continued detention is unlawful.

### IV. Conclusion

For the reasons set forth above, the Court **grants** the petition to the extent that no later than **5:00 p.m. on May 20, 2026**, Respondents must either: (1) provide Mr. Madriz Ortiz with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Mr. Madriz Ortiz from custody, under reasonable conditions of supervision. No later than **5:00 p.m. on May 22, 2026**, Respondents must file documentation certifying that they have provided Mr. Madriz Ortiz with a bond hearing or released him from detention.

**SO ORDERED.**

Date: 5/15/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

13